# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1029

_____

Jennifer L. Burbridge, Personal Representative of the Estate of Drew Eugene
Burbridge, Deceased

*Plaintiff - Appellee*[1]

Jennifer L. Burbridge

*Plaintiff*

v.

City of St. Louis, Missouri; John Doe, #4 in his individual and official capacities;
John Doe, #2 in his individual and official capacities; John Doe, #3 in his
individual and official capacities

*Defendants*

Marcus Biggins, P.O.; Sgt. Brian Rossomanno

*Defendants - Appellants*

John Doe, in his individual and official capacities

*Defendant*

Samuel Rachas, in his individual and official capacities; Keith Burton, in his
individual and official capacities

*Defendants - Appellants*

---

[1]Jennifer L. Burbridge, Personal Representative of the Estate of Drew Eugene
Burbridge, was substituted for Appellee Drew E. Burbridge pursuant to Federal Rule
of Appellate Procedure 43(a)(1).

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 13, 2021
Filed: June 25, 2021
_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Following his arrest at a protest, Drew Burbridge sued the City of St. Louis and several of its police officers under 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights and conspiracy to violate his rights, and under Missouri state law.  The officers asserted the defense of qualified immunity on the § 1983 claims and the defense of official immunity on the state law claims.  The district court[2] denied the officers' motion for summary judgment, and the officers appealed.  We affirm.

I.

Drew Burbridge (Drew)[3] and his wife Jennifer Burbridge (collectively, the Burbridges) are documentary filmmakers who were covering protests in downtown St. Louis, Missouri, following Officer Jason Stockley's acquittal of charges arising from the death of Anthony Lamar Smith.  On September 17, 2017, the Burbridges

_____

[2]The Honorable Stephen R. Clark, United States District Judge for the Eastern District of Missouri.

[3]Like the district court, we refer to Drew Burbridge by his first name "in the interest of clear identification, and not to imply familiarity."  R. Doc. 104, at 5 n.3.

-2-

were present during nighttime protests when officers declared an unlawful assembly and gave a dispersal order; however, neither of the Burbridges heard any order to disperse. The Burbridges began recording the protesters' activities with their video camera.

Eventually, St. Louis police officers began encircling the intersection where the Burbridges were. The Burbridges approached the officers and identified themselves as journalists but were told they could not leave. They then complied with police orders to move back and sit on the ground. While they were sitting on the sidewalk, an unidentified officer allegedly said, "That's him," and then two officers grabbed Drew and "dragged him away." R. Doc. 104, at 5. Officers then placed Drew on the ground face down, and while he was compliant and not resisting, officers twice pepper-sprayed Drew in the face. Officers then proceeded to strike Drew repeatedly on the back of the head, in the ribs, and on the shoulder, causing him to lose consciousness. At some point during the altercation, officers restrained Drew's hands with zip-ties. Drew was arrested and charged with "failure to disperse" and was taken into custody at the St. Louis City Justice Center.

The Burbridges sued the City of St. Louis (the City) and several St. Louis police officers, including Officer Marcus Biggins (Officer Biggins), alleging numerous violations of their constitutional rights under 42 U.S.C. § 1983 and violations of state law. As relevant to this appeal,[4] they alleged that the officers used excessive force in violation of the Fourth Amendment and committed state law assault and battery against Drew, retaliated against Drew for exercising his First Amendment rights, and conspired with each other to violate Drew's rights. The conspiracy claim was brought against the officers in their individual and official capacities, the latter of which the district court treated as a claim against the City. At summary judgment, the City argued that the conspiracy claim against it was barred by the intracorporate conspiracy doctrine. Additionally, the officers raised the defense of qualified immunity as to the First and Fourth Amendment claims and

_____

[4]None of Jennifer Burbridge's claims are the subject of this appeal.

the defense of official immunity as to the assault and battery claim. As to the conspiracy claim, the officers argued that there was no evidence demonstrating that they had agreed among themselves to violate Drew's constitutional rights and that there was no underlying constitutional violation. The district court granted summary judgment in favor of the City on the conspiracy claim, finding that Drew failed to provide sufficient evidence that the City conspired with the officers and declining to reach the issue of the intracorporate conspiracy doctrine. The district court denied summary judgment to the officers on the excessive force, First Amendment retaliation, conspiracy, and assault and battery claims. All officers appeal the denial of summary judgment on the conspiracy claim, but only Officer Biggins appeals the denial on the claims of excessive force, First Amendment retaliation, and assault and battery.

While this appeal was pending, Drew passed away. A Missouri probate court appointed Jennifer Burbridge as Drew's personal representative. Ms. Burbridge, as personal representative of Drew's estate, filed a motion in this Court seeking to be substituted as a party pursuant to Federal Rule of Appellate Procedure 43(a)(1), which this Court granted.

II.

We must first address the scope of our jurisdiction over this interlocutory appeal under 28 U.S.C. § 1291. "When a district court issues an order denying qualified immunity, we can immediately review that order 'to the extent that it turns on an issue of law.'" Hoyland v. McMenomy, 869 F.3d 644, 651 (8th Cir. 2017) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). On an appeal of a denial of qualified immunity at summary judgment, "we can consider [only] the legal question whether, in view of the facts that the district court deemed sufficiently supported for summary judgment purposes, the individual defendants' conduct was objectively reasonable given their knowledge and the clearly established law." Id. (citation omitted).

Our jurisdiction to review such denials of qualified immunity "does not extend to the issue of 'whether or not the pretrial record sets forth a "genuine" issue of fact for trial.'" Thompson v. Dill, 930 F.3d 1008, 1012 (8th Cir. 2019) (quoting Johnson v. Jones, 515 U.S. 304, 320 (1995)). Accordingly, we generally lack jurisdiction to review denials of qualified immunity "simply because we disagree with the district court as to whether there is sufficient evidence to conclude a material fact is genuinely in dispute." Id. That question is beyond our limited appellate jurisdiction unless the appellant can show that "the record plainly forecloses the district court's finding of a material factual dispute." See id.; cf. Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Additionally, "[t]he interlocutory appeal for denial of qualified immunity is a vehicle with limited capacity and cannot accommodate other interlocutory appellate arguments unless they are 'inextricably intertwined' with the defense of qualified immunity." White v. McKinley, 519 F.3d 806, 815 (8th Cir. 2008) (citation omitted). "An interlocutory appeal is not inextricably intertwined with the question of qualified immunity if the resolution of the two issues requires entirely different analysis." Id.

"We review a district court's qualified immunity determination on summary judgment de novo, viewing the record in the light most favorable to [the plaintiff] and drawing all reasonable inferences in [his] favor." Hoyland, 869 F.3d at 648 (second alteration in original) (citation omitted). Additionally, we "accept[] as true the facts that the district court found were adequately supported, as well as the facts the district court likely assumed." Id. at 648-49 (alteration in original) (citation omitted).

III.

Officer Biggins contends that he is entitled to (1) qualified immunity on Drew's Fourth Amendment excessive force and First Amendment retaliation claims,

and (2) official immunity on Drew's state law assault and battery claim. On the Fourth Amendment claim, Officer Biggins argues that he applied only *de minimis* force by kneeling on Drew's legs during the arrest and that the use of *de minimis* force does not constitute a Fourth Amendment violation. Relatedly, he argues that his decision "to apply minimal force" to Drew to aid in Drew's arrest was discretionary, entitling him to official immunity under state law as to the assault and battery claim.[5] On the First Amendment claim, his sole argument is that if Drew's excessive force claim fails, the First Amendment claim necessarily fails as well.

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009) (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)). "Courts conduct a two-part inquiry to determine whether qualified immunity protects a[n] . . . official from liability: (1) whether the facts taken in a light most favorable to [the plaintiff] make out a violation of a constitutional [or statutory] right; and (2) whether that right was clearly established" at the time of the defendant's alleged misconduct. Hoyland, 869 F.3d at 652 (citation omitted). "'If the answer to either question is no' then a defendant is entitled to qualified immunity." White v. Jackson, 865 F.3d 1064, 1074 (8th Cir. 2017) (citation omitted).

"Excessive force claims under the Fourth Amendment are governed by a reasonableness standard." Id. (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). Analyzing whether the use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. (quoting Graham, 490 U.S. at 396). "Applying this balancing test 'requires careful attention to the facts and circumstances of each particular case,'" including the severity of the

---

[5]Thus, the assault and battery claim is "inextricably intertwined" with the excessive force claim, and we have jurisdiction to consider it. See McKinley, 519 F.3d at 815.

crime, whether the suspect poses an immediate threat to officer safety, and "whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham, 490 U.S. at 396). Here, the district court found that a genuine dispute of material fact exists as to whether and to what extent Drew resisted arrest, and Appellants do not challenge this determination on appeal.

"Under Missouri law, a law enforcement officer 'is answerable in damages as for assault and battery only when in the performance of his duty in making the arrest he uses more force than is reasonably necessary for its accomplishment.'" Schoettle v. Jefferson Cnty., 788 F.3d 855, 861 (8th Cir. 2015) (quoting Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987)). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." Davis v. White, 794 F.3d 1008, 1013 (8th Cir. 2015). Officer Biggins is entitled to official immunity on the assault and battery claim unless he acted with malice or bad faith— that is, an "actual intent to cause injury" to Drew. See Twiehaus v. Adolf, 706 S.W.2d 443, 447 (Mo. 1986). The district court found genuine disputes of material fact as to whether the officers (including Biggins) "struck, kicked, and pepper sprayed Drew while he was unconscious and not resisting arrest," and viewing the facts in the light most favorable to Drew, a jury could conclude that the officers acted with an "actual intent to injure," making official immunity inapplicable. R. Doc. 104, at 23-24.

To establish a First Amendment retaliation claim, the plaintiff must show: "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Peterson v. Kopp, 754 F.3d 594, 602 (8th Cir. 2014) (citation omitted). The adverse action alleged here is the use of excessive force. On appeal, Officer Biggins argues only that he did not use excessive force and thus there was no adverse action. As with the excessive force claim, he does not argue that the law was not clearly established. Rather, as explained above, his sole argument for

reversal is that if Drew's excessive force claim fails, the First Amendment claim necessarily fails as well.

Viewing the evidence in the light most favorable to Drew, we cannot agree that Officer Biggins's use of force was limited to kneeling and thus *de minimis*. In its summary judgment order, the district court stated that the officers "restrained Drew, placed a knee on his neck, and repeatedly struck him. Officers kicked Drew with a boot, and delivered blows to his head, ribs, and shoulder." R. Doc. 104, at 16. The district court further stated that the defendants "do not dispute that each of the Defendant officers participated in Drew's arrest and used force against Drew during the arrest." R. Doc. 104, at 16 n.7. Citing White v. Jackson, 865 F.3d at 1081, the district court found it was not fatal that Drew could not individually identify which officers landed the blows, given the other evidence (including the officers' testimony). R. Doc. 104, at 16 n.7. The district court also cited Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999), for the proposition that "a factual dispute 'regarding the amount and the degree of force used . . . establishes a genuine issue of material fact for trial precluding summary judgment.'" R. Doc. 104, at 17 (omission in original).

While the district court could have been clearer, we interpret its statements and citations to mean that it found a reasonable jury could find that the amount of force applied to Drew by each officer, including Officer Biggins, was unreasonable. Officer Biggins does not challenge the district court's statement that the officers undisputedly participated in Drew's arrest and used force during it. Rather, he argues that video evidence blatantly shows that his involvement in the arrest was limited to kneeling on Drew's legs and that therefore his use of force was *de minimis*. We have carefully reviewed the videos of the incident, and we are unable to clearly see that Officer Biggins's involvement was limited to kneeling on Drew's legs, nor are we able to otherwise parse the actions of individual officers. We therefore conclude that the videos do not blatantly contradict Drew's version of events or the district court's determinations regarding the record. See Scott, 550 U.S. at 380; cf. Michael v. Trevena, 899 F.3d 528, 532 (8th Cir. 2018) (reversing grant of summary

judgment based on qualified immunity in excessive force claim because neither party's version of events was "blatantly contradicted by the record" because dash cam video did not show six key events).

Additionally, we agree with the district court that our decision in White v. Jackson establishes that this record is legally sufficient to defeat qualified immunity on an excessive force claim against an officer in Officer Biggins's position. In White, one of the plaintiffs testified he was beaten by multiple officers during an arrest following a protest. 865 F.3d at 1080. One of the officers, Officer Payne, testified that he observed the arrest; he yelled at the plaintiff to stop resisting; the plaintiff sat up and leaned against his leg; and then he helped the plaintiff up and took the plaintiff to the paramedics. Id. at 1081. We explained: "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation. That does not mean however that a § 1983 excessive force plaintiff must be able to personally identify his assailants to avoid summary judgment." Id. (citations omitted). We concluded that the evidence was sufficient to show Officer Payne's personal participation in the arrest where excessive force was used, making summary judgment inappropriate. Id. Conversely, we affirmed the grant of summary judgment as to Officer Jackson because there was no evidence that Jackson was involved at all in the arrest. Id. Here, the case against Officer Biggins is similar to the case against Officer Payne in White; in fact, the case against Officer Biggins appears even stronger since he, unlike Officer Payne, admitted to using force during Drew's arrest.

Viewing the evidence in Drew's favor, a reasonable jury could conclude that Officer Biggins used excessive force during Drew's arrest. Moreover, a reasonable jury could conclude that Officer Biggins acted with an "actual intent to cause injury" to Drew. See Twiehaus, 706 S.W.2d at 447. Finally, a reasonable jury could conclude that Officer Biggins's use of excessive force was done in retaliation for Drew's First Amendment activity. Accordingly, we conclude that the district court did not err in denying summary judgment based on qualified immunity to Officer Biggins on Drew's First and Fourth Amendment claims, nor did the district court err

in denying summary judgment based on official immunity to Officer Biggins on Drew's state law assault and battery claim.

## IV.

Appellants also argue that we should adopt the intracorporate conspiracy doctrine[6] as a bar to Drew's § 1983 conspiracy claim against Appellants in their individual capacities. To prevail on a § 1983 conspiracy claim, Drew must show that (1) the defendants agreed to deprive him of his constitutional rights; "(2) 'at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy,' and (3) [Drew] was injured by that overt act." See S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs, 725 F.3d 843, 850 (8th Cir. 2013) (citation omitted). Appellants do not advance any arguments regarding the substantive elements of conspiracy; they argue only that the intracorporate conspiracy doctrine should apply to bar the claim. Alternatively, Appellants argue that they are entitled to qualified immunity because it was not clearly established in this circuit whether the intracorporate conspiracy doctrine applied to bar § 1983 conspiracy claims.

We construe Appellants' argument before the district court at summary judgment to be that the intracorporate conspiracy doctrine applied to bar only the

---

[6]"It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can . . . ." Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952). Under the intracorporate conspiracy doctrine, "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity." See Ziglar v. Abbasi, 137 S. Ct. 1843, 1867 (2017). The doctrine stems from basic agency principles that attribute the acts of a corporation's employees to the corporation itself, so that all their acts are treated as the acts of a single legal entity. See id. Because the acts of corporate employees are treated as the acts of a single legal entity (the corporation), such corporate employees are a single actor and thus cannot constitute the plurality of persons required for a conspiracy. See id.

conspiracy claim against *the City*, not the officers.[7]  Additionally, Appellants did not argue to the district court that the law was not clearly established with respect to conspiracy.  See R. Doc. 93, at 8-11.  "Ordinarily, we do not consider an argument raised for the first time on appeal."  Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc., 809 F.3d 1018, 1022 (8th Cir. 2016) (citation omitted).  "[W]e have *discretion* to consider a newly raised argument 'if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result.'"  Combs v. The Cordish Cos., Inc., 862 F.3d 671, 678-79 (8th Cir. 2017) (emphasis added) (citation omitted).  Because we lack the benefit of the district court's decision and reasoning on these issues, in our discretion we decline to consider them for the first time on appeal.  See Spann v. Lombardi, 960 F.3d 1086, 1088 (8th Cir. 2020).

V.

For the foregoing reasons, we affirm the district court's judgment.

_____

_____

[7]Although the heading in the summary judgment motion states that the doctrine "should bar any claim against these defendants," R. Doc. 93, at 8, the argument's substance indicates that it is the City's argument only.  For example, the argument's first sentence reads: "The conspiracy allegations . . . cannot be the basis of a claim against the City."  R. Doc. 93, at 8.  It appears that the district court also construed the argument in this manner, as the district court does not mention the intracorporate conspiracy doctrine in its summary judgment opinion when discussing the conspiracy claim against the officers.  See R. Doc. 104, at 18-20.