# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1116
_____

Michael Faulk

*Plaintiff - Appellee*

v.

City of St. Louis, Missouri

*Defendant*

Gerald Leyshock, Col., in his individual capacity, et al.

*Defendants - Appellants*

------------------------------

29 Media Organizations; Reporters Committee for Freedom of the Press

*Amici on Behalf of Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: December 16, 2021
Filed: April 6, 2022
_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.
_____

LOKEN, Circuit Judge.[*]

This is one of numerous lawsuits arising out of protests and unrest on September 15 to 17, 2017, following the acquittal of former St. Louis Metropolitan Police Department ("SLMPD") Officer Jason Stockley in the killing of Anthony Lamar Smith. For an overview of the events, the reader is referred to Eastern District of Missouri Judge Catherine D. Perry's November 15, 2017, opinion granting a preliminary injunction against the City of St. Louis regarding enforcement of its unlawful assembly ordinance and use of chemical agents against persons engaged in expressive, non-violent activity. Ahmad v. City of St. Louis, No. 4:17 CV 2455 CDP, 2017 WL 5478410, at *1-5 (E.D. Mo. Nov. 15, 2017).[1] This opinion followed a three-day evidentiary hearing at which eighteen witnesses testified. A flood of § 1983 damage actions followed. We list actions we are aware of in Appendix A.

In this action, journalist Michael Faulk alleges he was unlawfully assaulted, pepper sprayed, detained in an unlawful mass arrest, and incarcerated for thirteen hours. He sues the City of St. Louis and multiple SLMPD officers for First, Fourth, and Fourteenth Amendment violations, conspiracy to deprive him of civil rights, and supplemental state law claims. As relevant here, one defendant, SLMPD Officer James Wood, moved to dismiss the § 1983 claims, arguing Faulk's amended complaint failed to state a claim and Wood is entitled to qualified immunity. See Fed. R. Civ. P. 12(b)(6). Five months later, the individual defendants filed a Rule 12(c) motion for judgment on the pleadings on the conspiracy claim, arguing they are entitled to qualified immunity because the claim is barred by the intracorporate conspiracy doctrine. The district court denied both motions in separate orders the

_____

[*]Judge Stras joins in all but Part III.A of this opinion.

[1]When the City appealed further proceedings in the district court, we modified the preliminary injunction and remanded with directions. Ahmad v. City of St. Louis, 995 F.3d 635, 643 (8th Cir. 2021). But the initial decision was not questioned.

officer defendants now appeal. We have jurisdiction to review an interlocutory order denying qualified immunity "to the extent that it turns on an issue of law." Mitchell v. Forsyth, 472 U.S. 522, 530. Reviewing both rulings *de novo*, interpreting the complaint in favor of Faulk, the non-moving party, and assuming well-pleaded facts as true, we reverse. See Buckley v. Hennepin Cty., 9 F.4th 757, 760 (8th Cir. 2021) (standard of review).

## I. Background

Faulk's amended complaint alleges that he followed demonstrations in and around downtown St. Louis on his bicycle the afternoon and evening of September 17, wearing his media ID card and frequently tweeting updates and posting images. In the evening, after cycling to the Olive Street and Tucker Boulevard intersection, he saw a line of police officers approach from the west and order those gathered to move west on Locust Street or north on Tucker. Faulk and many others complied. Four lines of police officers then formed a "kettle" at the Tucker-Washington intersection, blocking all means of egress. Faulk asked to leave, shouting "Post Dispatch" and displaying his press credentials. He was ignored. Officers yelled "Stop Resisting" and "Get Down," indiscriminately pepper spraying the crowd. Faulk went to the ground, kneeling over his bicycle. He was grabbed, struck with a police baton, pepper sprayed, restrained with painful plastic "zip-cuffs," and eventually arrested along with over 100 others. After the arrest, Officer Wood retrieved Faulk's bicycle, which another officer had thrown in the street, and placed it in police custody. Transported to the St. Louis City Justice Center ("CJC"), Faulk was placed in a cell with approximately fifteen others, then isolated when he tried to interview his cellmates. He was denied medical attention and detained for thirteen hours, then released and charged with "failure to disperse."

Faulk filed this action in February 2018 against the City of St. Louis, six "supervising" SLMPD officers in their individual capacities, and five "John Doe"

defendants. A seventh SLMPD officer was added in a Second Amended Complaint filed in August 2019. The district court ordered the parties to conduct limited discovery to identify the John Doe defendants. In January 2020, Faulk filed a motion for leave to file a Fifth Amended Complaint adding nine individual defendants and removing fictitious John Doe defendants. Faulk explained, "Defendants, through a [Rule] (30)(b)(6) designee, were able to use video clips and photo stills prepared by Plaintiff to identify the arrest team who seized Mr. Faulk, and other officers in close proximity to Mr. Faulk." The district court granted the motion. On January 30, Faulk filed a 62-page Fifth Amended Complaint ("FAC") containing 332 numbered paragraphs. The FAC identifies six of the new defendants as "Doe Police Officers" who arrested Faulk. It alleges that new defendants Tom Long and James Wood were SLMPD officers "working during the events of September 17, 2017," and that new defendant Lawrence O'Toole was SLMPD Acting Commissioner who "is vicariously liable for the acts and omissions of the Defendant Officers and Sergeants." Faulk attached to the FAC six exhibits totaling over 700 pages, including the transcript of the October 2018 preliminary injunction hearing and a sworn declaration from Ahmad v. St. Louis, excerpts from which were repeatedly cited in the FAC.

The FAC asserted twelve federal and state claims. Three § 1983 federal claims are at issue in this interlocutory appeal. Count I alleges all defendants violated Faulk's First Amendment rights by "interfering with his ability to gather information and cover a matter of public interest as a member of the media," and by "isolating him from other arrestees and refusing to allow him back into the cell with other arrestees unless he forfeited his pen and paper." Count II alleges the individual defendants violated the Fourth Amendment by unreasonably seizing Faulk during the kettling event and by arresting him without arguable probable cause. Count V alleges all defendants conspired "to undertake a course of conduct that violated Mr. Faulk's civil rights." (Wood is not a named defendant in Counts III and IV, which allege Fourth Amendment excessive force claims against eight individual defendants, or in

municipal liability Count VI. The pending state law claims in Counts VII-XII are against all defendants but are not at issue on appeal.)

In denying Wood's motion to dismiss, and defendants' motion for judgment on the pleadings on Count V, the district court concluded the FAC is well pled, qualified immunity is not warranted at the motion to dismiss stage, and the intracorporate conspiracy doctrine provides no basis to grant qualified immunity on Count V. Wood appeals the denial of qualified immunity on Counts I, II, and V. All defendants appeal the court's refusal to grant judgment on the pleadings on Count V based on the intracorporate conspiracy doctrine.

## II. Counts I and II

Qualified immunity ensures that government officials performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects an official "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (quotation omitted). We have discretion to decide which requirement "to tackle first." Id. As "an *immunity from suit* rather than a mere defense to liability . . . [qualified immunity] is effectively lost if a case is erroneously permitted to go to trial." Mitchell, 472 U.S. at 526 (emphasis in original). Thus, "a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a final decision within the meaning of § 1291." Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009) (quotations omitted).

We review the denial of a motion to dismiss on qualified immunity grounds *de novo*, viewing the FAC in light most favorable to Faulk and accepting all factual

allegations as true. See Stanley v. Finnegan, 899 F.3d 623, 625 (8th Cir. 2018). The FAC "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotations omitted). Ruling on a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." Wilson v. Northcutt, 441 F.3d 586, 591 (8th Cir. 2006); see Roberts v. City of Omaha, 723 F.3d 966, 974-75 (8th Cir. 2013).

Counts I and II incorporate by reference all factual allegations in the preceding paragraphs 8 to 206 of the FAC. Only two of those paragraphs name Wood:

> 26. Officer James Wood was employed as a police officer with the SLMPD. Officer Wood was working during the events of September 17, 2017 and took possession of Plaintiff Faulk's bicycle. He is sued in his individual capacity. Officer Wood knew or should have known that there was no legal justification to seize Plaintiff Faulk's property, and retained and failed to return Mr. Faulk's bicycle.

> 172. While Mr. Faulk was laying prostrate on the ground, an SLMPD officer picked up Mr. Faulk's bicycle from the sidewalk and threw it into the street. Officer James Wood seized the bicycle and placed it in police custody.

In response to Wood's motion contending that the FAC contains no facts showing his personal involvement in the alleged First and Fourth Amendment violations, Faulk pointed to allegations that "(1) Wood was part of the team effectuating the kettle and mass arrest that restricted Plaintiff's right to observe and

report on police behavior,[2] and (2) Wood assisted the team effectuating the mass arrest by collecting evidence" (presumably referring to Faulk's bicycle).

The district court declined to dismiss Counts I and II against Wood "at this time." Instead, the Court said it will permit Plaintiff to engage in discovery on his claims, and Wood "remains free to renew his arguments on summary judgment." Six weeks later, citing controlling Eighth Circuit precedent, Judge Perry ruled in another § 1983 damage action arising out of the mass arrest kettling incident that claims against several hundred defendants against whom no specific allegations were made must be dismissed:

> [T]he only facts plaintiffs have alleged in this case about each individual is that each defendant was employed by the SLMPD 'during the events of September 17, 2017.' Defendants cannot be held liable merely because they were employed by the SLMPD on the night some members of that department may have violated plaintiffs' rights -- liability under § 1983 requires proof of a causal link between *each* defendant and the *specific wrongs* that defendant committed. . . . Absent specific and plausible allegations, plaintiffs' claims are merely legal conclusions couched as factual allegations.

Street v. O'Toole, No. 4:19 CV 2590, 2021 WL 677909, at *4 (E.D. Mo. Feb. 22, 2021) (emphasis in original).[3] Subsequent interlocutory rulings in three related damage actions have agreed with Judge Perry's ruling. See Thomas v. City of St. Louis, No. 4:18-CV-01566, 2021 WL 4622502, at *5-6 (E.D. Mo. Oct. 7, 2021);

---

[2]The allegation that Wood and 8 other defendants "agreed to participate in the illegal kettling plan" is contained in paragraph 255 of the FAC, part of the Count V conspiracy allegations.

[3]Defendants appealed other aspects of Judge Perry's decision. The appeal, Street v. Leyshock, No. 21-1524, was argued on January 12, 2022, and is awaiting decision. This part of Judge Perry's decision is not at issue on appeal.

Robertson v. City of St. Louis, No. 4:18-CV-01570, 2021 WL 4459728, at *4-5 (E.D. Mo. Sep. 29, 2021); Ziegler v. City of St. Louis, No. 4:18-CV-01577, 2021 WL 4459747, at *5-6 (E.D. Mo. Sep. 29, 2021). We agree with these decisions.

Here, the only FAC allegations relating to Officer Wood's involvement are that he was working on September 17 and took custody of Faulk's bicycle that was lying in the street at the time of Faulk's arrest. These allegations do not establish a causal link between Wood and the specific wrongs defendants allegedly committed. Count I alleges that defendants violated Faulk's First Amendment rights by "interfering with his ability to gather information and cover a matter of public interest as a member of the media." There is no allegation Wood was involved in that or had any interaction with Faulk at all. Count I also alleges defendants violated Faulk's First Amendment rights by "isolating him from other arrestees and refusing to allow him back into the cell with other arrestees unless he forfeited his pen and paper." The FAC does not allege that Officer Wood was even present at the CJC when Faulk's First Amendment rights were allegedly violated during his detention.

Count II alleges the individual defendants violated the Fourth Amendment by unreasonably seizing Faulk during the kettling event and by arresting him without arguable probable cause. The FAC does not allege that Wood was one of the named arrest team defendants. It includes no fact allegations supporting an inference that Wood intended to or did participate in the kettling. Without factual enhancement, the naked allegations that Wood "agreed" to participate in illegal kettling and unlawful arrests are "merely legal conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). Mere presence at the scene -- being an officer "in close proximity to Mr. Faulk" -- is not enough to defeat a claim of qualified immunity. See White v. Jackson, 865 F.3d 1064, 1081 (8th Cir. 2017).

While the allegation that Wood took possession of Faulk's bicycle is slightly more than simply alleging he was working that night, the bicycle incident is not

mentioned in Counts I and II, and the FAC does not assert a § 1983 property claim. Moreover, an officer who was "simply working" in the vicinity that night might take custody of a bicycle lying in harm's way to *protect* a citizen's property. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (cleaned up).

Faulk argues the district court properly denied Wood's motion to dismiss, permitting Faulk to pursue discovery and Wood to renew his arguments at the summary judgment stage. There are two serious flaws in this analysis. First, it is contrary to controlling Supreme Court precedent. In Twombly, a complex antitrust conspiracy case, the Court squarely rejected this contention, adopting a more rigorous plausibility pleading standard: "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management' . . . given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side." 550 U.S. at 559. In Iqbal, the Court was emphatic in applying this rule in § 1983 qualified immunity cases:

> Our rejection of the careful-case-management approach is especially important in suits where Government-official defendants are entitled to assert the defense of qualified immunity. The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation . . . If a Government official is to devote time to his or her duties . . . it is counterproductive to require the substantial diversion that is attendant to participating in litigation.

556 U.S. at 685.

Second, applying this principle is particularly appropriate in this case. At the district court's direction, Faulk was permitted to engage in extensive discovery to

replace John Doe Defendants with named defendants who participated in the alleged First and Fourth Amendment violations. As a result, Faulk added new defendants identified as members of the "arrest team" and specific allegations of the roles played by many of the initial defendants. But as to Wood, all Faulk could factually allege in 332 paragraphs was that he was working on September 17 and took custody of Faulk's bicycle. Requiring Wood to devote time to multi-party discovery in which Faulk fishes for something more to tie him to the "kettle plan" is precisely what Iqbal precludes.

After substantial discovery and access to evidentiary proceedings in Ahmad, Faulk's lengthy FAC lacks a factual basis to infer that Officer Wood was personally involved in the constitutional violations alleged in Counts I and II. Accordingly, we reverse the district court's denial of Officer Wood's motion to dismiss these claims.[4]

### III. Count V

In Count V, Faulk alleges that all defendants "conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Mr. Faulk's civil rights." More specifically, Count V alleges:

---

[4]Therefore, we do not consider Officer Wood's alternative qualified immunity arguments, including whether officer participation in kettling is an unlawful Fourth Amendment seizure; if so, whether it would violate "clearly established" rights for purposes of qualified immunity; and whether the officers warrant qualified immunity because they had arguable probable cause to arrest Faulk and the others as part of a group violating the law. See, e.g., Baude v. City of St. Louis, 476 F. Supp. 3d 900 (E.D. Mo. 2020), aff'd sub nom. Baude v. Leyshock, 23 F.4th 1065 (8th Cir. 2022); Burbridge v. City of St. Louis, 430 F. Supp. 3d 595, 610-11 (E.D. Mo. 2019), aff'd, 2 F.4th 774 (8th Cir. 2021); Bernini v. City of St. Paul, 665 F.3d 997, 1004 (8th Cir.), cert. denied, 568 U.S. 978 (2012).

-- The City was a member of the conspiracy because its officials "were involved in the planning, monitoring and/or execution of this event."

-- Four supervisory SLMPD officers "conspired to design and implement the illegal kettling plan."

-- Two other supervisory officers "joined the conspiracy when they directed officers under their control and supervision to execute the illegal kettling plan."

-- Nine SLMPD officers including Wood "joined the conspiracy when they agreed to participate in the illegal kettling plan."

In the motions to dismiss, Wood argued the FAC failed to plausibly allege his participation in the alleged conspiracy; all defendants argued Count V is barred by the intracorporate conspiracy doctrine.

A. Officer Wood.  Officer Wood argues the district court erred in denying him qualified immunity because the FAC does not plausibly plead that he was involved in constitutional misconduct.  "To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff."  White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008).

As we have explained, the FAC does not contain specific and plausible allegations linking Wood to the overt acts that Count V alleges defendants committed against Faulk -- unlawful kettling and unlawful seizure, arrest without probable cause, use of excessive force, and detention for thirteen hours.  What Count V adds are allegations that Wood "agreed to participate" in violations of his civil rights and "shared the conspiratorial objectives" to punish Faulk and other victims of the illegal

kettling plan "because Defendants believed the group to be protesting police brutality."

We conclude these allegations do not state a plausible claim of civil conspiracy against Officer Wood. "Without some further factual enhancement [a naked assertion of conspiracy] stops short of the line between possibility and plausibility of 'entitlement to relief.'" Twombly, 550 U.S. at 557 (cleaned up); see DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999). Nor does the FAC "contain any factual allegation sufficient to plausibly suggest [Wood's] discriminatory state of mind." Iqbal 556 U.S. at 683. Without factual enhancement, these naked allegations are "merely legal conclusions." Twombly, 550 U.S. at 564. A conspiracy claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Id. at 556. Wood is entitled to qualified immunity on this claim. See Boxill v. O'Grady, 935 F.3d 510, 519 (6th Cir. 2019); Redd v. Nolan, 663 F.3d 287, 292 (7th Cir. 2011).

B. The Other Defendants. On appeal, the other individual defendants argue they are entitled to qualified immunity from Count V because the applicability of the intracorporate conspiracy doctrine was not clearly established. This is a much harder question. We begin with a review of the doctrine's relevant history.

The doctrine originated in antitrust cases interpreting Section 1 of the Sherman Act, 15 U.S.C. § 1, a statute which prohibits "every contract, combination . . . or conspiracy, in restraint of trade." In Copperweld Corp. v. Independence Tube Corp., the Supreme Court held that, because Section 1 "does not reach conduct that is wholly unilateral," the statute does not apply to alleged concerted action by "officers or employees of the same firm," or to "operations of a corporate enterprise organized into divisions," or to the "coordinated activity of a parent and its wholly owned subsidiary." 467 U.S. 752, 768-71 (1984) (cleaned up).

-12-

When defendants in later cases argued the doctrine should be applied to unlawful conspiracy claims in civil rights actions under 42 U.S.C. §§ 1983 and 1985, various lower federal courts reacted quite differently. See Bowie v. Maddox, 642 F.3d 1122, 1130-31 (D.C. Cir. 2011) (citing cases), cert. denied, 565 U.S. 1235 (2012). The Supreme Court initially declined to resolve this conflict in the circuits. See Hull v. Shuck. 501 U.S. 1261 (1991) (White, J., dissenting from the denial of certiorari). But in Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017), the Court addressed the question whether the doctrine applies to claims under § 1985(3), a statute which, like Section 1 of the Sherman Act, forbids certain conspiracies.

The Court's response to the question in Ziglar decided that case but did not resolve broader issues. The Court first observed that the doctrine

> is derived from the nature of the conspiracy prohibition. Conspiracy requires an agreement -- and in particular an agreement to do an unlawful act -- between or among two or more separate persons. When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people.

Id. at 1867. Then, after noting "a longstanding split about whether the intracorporate-conspiracy doctrine applies to civil rights conspiracies," the Court declined to answer the question definitively:

> Nothing in this opinion should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged § 1985(3) violation. The Court might determine, in some later case, that different considerations apply to a conspiracy respecting equal protection guarantees, as distinct from a conspiracy in the antitrust context.

Id. at 1868. The Court noted that the alleged conspiracy in Ziglar involved discussions among officers in the same branch of government that "were the preface to, and the outline of, a general and far-reaching policy." Id. at 1867. It explained that these governmental considerations

> suggest that officials employed by the same governmental department do not conspire when they speak to one another and work together in their official capacities. Whether that contention should prevail need not be decided here. It suffices to say that the question is sufficiently open so that the officials in this suit could not be certain that § 1985(3) was applicable to their discussion *and actions*.

Id. at 1868-69 (emphasis added). The Court held that "Petitioners are entitled to qualified immunity with respect to the claims under 42 U.S.C. § 1985(3)." Id. at 1869.

Prior to Ziglar, we applied the intracorporate conspiracy doctrine in affirming the dismissal of § 1985(2) conspiracy claims against County employees acting within the scope of their employment. L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo., 673 F.3d 799, 812-13 (8th Cir. 2012); Meyers v. Starke, 420 F.3d 738, 742 (8th Cir. 2005).[5] Following Ziglar, we held that the doctrine precluded § 1985(2) and (3) conspiracy claims because "a local government entity cannot conspire with itself through its agents acting within the scope of their employment," even if the plaintiff "alleges improprieties in the execution of these duties." Kelly v. City of Omaha, 813 F.3d 1070, 1078-79 (8th Cir. 2016) (cleaned up). Defendants argue that Count V fails to allege an actionable § 1983 conspiracy as a matter of law because the alleged

---

[5]In an earlier case, we affirmed the dismissal of § 1985(3) claims that tribal council members conspired to enact invalid tribal resolutions because "[t]he Tribal Council as an entity or governmental body cannot conspire with itself." Runs After v. United States, 766 F.2d 347, 354 (8th Cir. 1985).

-14-

conspirators are the City of St. Louis and its employees who are entitled to qualified immunity under this doctrine, like the defendants in <u>Ziglar</u>.

As Faulk notes, we have never definitively addressed the issue whether the doctrine applies to § 1983 conspiracy claims. <u>See</u> <u>Burbridge</u>, 2 F.4th at 782-83 (declining to address the question because it was first raised on appeal). Other circuits have addressed the issue. Two have expressly held that the doctrine applies to § 1983 conspiracy claims, but its application in a particular case is subject to recognized exceptions. <u>See</u> <u>Jackson v. City of Cleveland</u>, 925 F.3d 793, 817-20 (6th Cir. 2019), <u>cert. denied</u>, 140 S. Ct. 855 (2020); <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1261-63 (11th Cir. 2010). Others have questioned whether the doctrine should apply, at least "[w]here 'equal protection' is at issue." <u>Stathos v. Bowden</u>, 728 F.2d 15, 20-21 (1st Cir. 1984); <u>see</u> <u>Brever v. Rockwell Int'l Corp.</u>, 40 F.3d 1119, 1126-27 (10th Cir. 1994).[6]

In surveying the decisions from other circuits, what stands out is the fact-intensive nature of their inquiries. None holds the intracorporate conspiracy doctrine

---

[6]In other kettling incident damage actions, Judge Sippel granted qualified immunity on the § 1983 conspiracy claim, concluding "[i]n light of this landscape, it cannot be said that the law regarding the application of the intracorporate conspiracy doctrine in § 1983 cases is clearly established." <u>Baude v. City of St. Louis</u>, 476 F. Supp. 3d at 916. We affirmed but this part of his decision was not before the court. <u>Baude v. Leyshock</u>, 23 F.4th 1065 (8th Cir. 2022). Judge Perry denied qualified immunity because we have "consistently recognized § 1983 conspiracy claims against police officers from the same police department if those police officers conspired to violate clearly established rights." <u>Street</u>, 2021 WL 677909, at *8, citing <u>Small v. McCrystal</u>, 708 F.3d 997, 1010 (8th Cir. 2013) (§ 1983 claim that police deputies conspired to fabricate reports), and <u>S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs</u>, 725 F.3d 843, 850-54 (8th Cir. 2013) (§ 1983 claim that SLMPD officers conspired to cover up a false arrest). This ruling is pending on appeal, No. 21-1524.

always applies, or never applies. Some hold it generally applies but is subject to exceptions. Others hold it does not apply in certain circumstances. This array is consistent with the doctrine's history we have briefly summarized. On one side of the current ledger as defined by Faulk is Justice Breyer's opinion as a circuit judge in Stathos, a decision cited in Justice White's dissent to illustrate the circuit conflict later addressed in Ziglar. Hull, 501 U.S. 1261. It is reasonable to assume that the Court's statement in Ziglar that "different considerations [might] apply to a conspiracy respecting equal protection guarantees," 137 S. Ct. at 1868, reflected consideration of the Stathos opinion. Justice Breyer, the author of Stathos, dissented in Ziglar but only addressed the main issue in that case -- whether to extend Bivens to the various claims at issue. Logically, this silence suggests at least tacit agreement with the majority that issues regarding whether and how to apply the doctrine to civil rights cases defy categorical pronouncements.

Approaching the issue from this perspective, it is significant that the FAC's conspiracy allegations are entirely focused on "the illegal kettling plan." If the plan itself was an unconstitutional municipal policy, then the City and all defendants "personally involved in that unconstitutional policy-making" are subject to § 1983 liability; Count V adds nothing to Faulk's § 1983 claims against those defendants. See A.H. v. St. Louis Cty., Mo., 891 F.3d 721, 728 (8th Cir. 2018). Likewise, Faulk does not need Count V to hold liable under § 1983 SLMPD officers who, while executing the kettling plan, *participated* in the constitutional violations Faulk alleges, even if the plan itself was not an unconstitutional policy. Under these particular circumstances, all that Count V adds is the risk of liability for an officer whose only role in the illegal kettling plan was to follow his employer's orders to block egress. This claim is inconsistent with well-established § 1983 principles of individual liability. "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." Board of

-16-

Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 415 (1997); see generally Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

In these circumstances, we conclude that the issue on appeal regarding Count V is analogous to Ziglar, where the Court granted qualified immunity because the uncertain applicability of the intracorporate conspiracy doctrine meant that § 1985(3) liability was not clearly established. See Dillard v. O'Kelley, 961 F.3d 1048, 1055 (8th Cir. 2020) (en banc) ("If a right does not clearly exist, it cannot be clearly established"). Our opinions in Small and Lendermen did not address this issue and have not been endorsed by the Supreme Court. Therefore, they do not clearly establish that reasonable officers "would . . . have known with any certainty" that planning, designing, monitoring, or executing "the illegal kettling plan" would expose them to damage liability for a § 1983 *conspiracy* claim. Ziglar, 137 S. Ct. at 1869; cf. Stanton v. Sims, 134 S. Ct. 3, 7 (2013).[7]

## IV. Conclusion

The Orders of the district court dated January 5 and January 8, 2021, are reversed in part and the case is remanded with directions to dismiss Officer Wood from Counts I and II and to dismiss Count V of Faulk's FAC.

## APPENDIX A

- Green v. City of St. Louis, No. 4:18-CV-1629 JCH, 2022 WL 278746 (E.D. Mo. Jan. 31, 2022)

---

[7]On appeal, Faulk argues in the alternative that, if the intracorporate conspiracy doctrine applies, his allegations "fall within the recognized exceptions to the doctrine." But that theory was not plausibly pleaded.

- Jones v. City of St. Louis, No. 4:19-CV-02583 AGF, 2021 WL 4947945 (E.D. Mo. Oct. 25, 2021)

- Thomas v. City of St. Louis, No. 4:18-CV-01566 JAR, 2021 WL 4622502 (E.D. Mo. Oct. 7, 2021)

- Gullet v. City of St. Louis, No. 4:18-CV-1571 JCH, 2021 WL 4459697 (E.D. Mo. Sept. 29, 2021)

- Robertson v. City of St. Louis, No. 4:18-CV-01570 JAR, 2021 WL 4459728 (E.D. Mo. Sept. 29, 2021)

- Ziegler v. City of St. Louis, No. 4:18-CV-01577 JAR, 2021 WL 4459747 (E.D. Mo. Sept. 29, 2021)

- Laney v. City of St. Louis, No. 4:18-CV-1575 CDP, 2021 WL 4439252 (E.D. Mo. Sept. 28, 2021)

- Nelson v. City of St. Louis, No. 4:18-CV-1561 JCH, 2021 WL 4399481 (E.D. Mo. Sept. 27, 2021)

- Davis v. City of St. Louis, No. 4:18-CV-1574 HEA, 2021 WL 4148331 (E.D. Mo. Sept. 13, 2021)

- Dreith v. City of St. Louis, No. 4:18-CV-1565 JCH, 2021 WL 4148324 (E.D. Mo. Sept. 13, 2021)

- Newbold v. City of Saint Louis, No. 4:18-CV-1572 HEA, 2021 WL 4061066 (E.D. Mo. Sept. 7, 2021), appeal dismissed, No. 21-3108, 2022 WL 839401 (8th Cir. Mar. 4, 2022)

- Ortega v. City of St. Louis, No. 4:18-CV-1576 DDN, 2021 WL 3286703 (E.D. Mo. Aug. 2, 2021)

- Street v. O'Toole, No. 4:19-CV-2590 CDP, 2021 WL 677909 (E.D. Mo. Feb. 22, 2021)

- Baude v. City of St. Louis, 476 F. Supp. 3d 900 (E.D. Mo. 2020), aff'd sub nom. Baude v. Leyshock, 23 F.4th 1065 (8th Cir. 2022)

- Burbridge v. City of St. Louis, 430 F.Supp.3d 595 (E.D. Mo. 2019), aff'd, 2 F.4th 774 (8th Cir. 2021)

- Rose v. City of St. Louis, No. 4:18-CV-1568 RLW, 2019 WL 4602829 (E.D. Mo. Sept. 23, 2019)
- Alston v. City of Saint Louis, No. 4:18-CV-01569-AGF, 2019 WL 2869896 (E.D. Mo. July 3, 2019)
- Laird v. City of Saint Louis, No. 4:18-CV-01567-AGF, 2019 WL 2647273 (E.D. Mo. June 27, 2019)
- Aldridge v. City of St. Louis, No. 4:18-CV-1677 CAS, 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019)
- Ahmad v. City of St. Louis, No. 4:17-CV-2455 CDP, 2017 WL 5478410 (E.D. Mo. Nov. 15, 2017), modified and remanded, 995 F.3d 635 (8th Cir. 2021)

_____