[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15040
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-22910-UU

KIRK DIXON,

Plaintiff – Appellant,

versus

CAPTAIN JAMES HODGES,
Everglades Correctional Institution, et al.,

Defendants,

NATHAN S. POLLOCK,
Everglades Correctional Institution,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 23, 2018)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Kirk Dixon, a Florida prisoner proceeding *pro se*, appeals from the District Court's grant of a motion to dismiss his civil rights complaint (filed pursuant to 42 U.S.C. § 1983) for lack of subject matter jurisdiction under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994). The *Heck* rule, as extended by *Edwards v. Balisok*, strips a district court of jurisdiction in a § 1983 suit brought by an imprisoned plaintiff "if 'a judgment in favor of the plaintiff would necessarily imply the invalidity'" of a punishment that "deprive[d] him of good-time credits," also referred to as gain time. 520 U.S. 641, 643, 117 S. Ct. 1584, 1586 (1997) (quoting *Heck*, 512 U.S. at 487, 114 S. Ct. at 2372).

Dixon was punished and lost gain time, but his § 1983 suit, if successful, would not *necessarily* imply that his punishment is invalid. Because success in this § 1983 suit would not necessarily be "logically contradictory" with the underlying punishment, this suit is not barred by *Heck*. *See Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007). The District Court erred by concluding otherwise and dismissing the complaint. We accordingly vacate the judgment and remand.

## I.

A district court's dismissal for lack of subject matter jurisdiction presents a legal question that we review *de novo*. *Miccosukee Tribe of Indians v. U.S. Army*

2

*Corps of Eng'rs*, 619 F.3d 1289, 1296 (11th Cir. 2010).  On review, the allegations

in the complaint must be accepted as true and construed in the light most favorable

to the plaintiff.  *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012).

We also construe *pro se* pleadings liberally.  *Timson v. Sampson*, 518 F.3d 870,

874 (11th Cir. 2008).  Therefore, we state the facts as alleged in Dixon's liberally-

construed complaint, viewed in the light most favorable to him.

## II.

In 2013, prison officials at Everglades Correctional Institution in Miami

assigned an elderly, handicapped inmate to the top bunk in Dixon's cell.  This

inmate was unable to reach the top bunk due to his disability.  Dixon went to the

officers' station to discuss this issue on August 12, 2013.  Officer Nathan Pollock

was present, among others.

Dixon tried to explain the problem to the officers, but they refused to listen

to him.  As Dixon continued to speak, Pollock began to shout at him.  Dixon asked

Pollock why he was shouting, and Pollock leapt out of his chair, approached Dixon

threateningly, and told him to return to his assigned dormitory.  Dixon turned to

leave.  After that, Pollock stepped on his right heel, tripping him.  Pollock then

picked Dixon up from the cement floor and slammed him down into it.  Pollock

proceeded to kick Dixon in his face and body for about two minutes before other

officers approached and handcuffed Dixon.  Dixon suffered serious injuries as a

result.  His shirt was soaked in blood and his face became unrecognizable from swelling.  He fractured his ribs, bruised his sternum, lost eyesight and was unable to walk for a time, and suffered a concussion.

Pollock's version of events differs significantly from Dixon's.  Pollock claims that Dixon ignored several orders to leave the officers' station.  After Dixon finally did turn to leave, he made a fist with his hand and turned back to lunge at Pollock.  Pollock contends that he used appropriate force in a manner necessary to subdue Dixon and that no medical professional ever found evidence of any trauma or injury suffered by Dixon as a result of this incident.[1]  On August 23, 2013, Dixon received a disciplinary report including one charge of Battery or Attempted Battery on a Correctional Officer.  He was found guilty, and his punishment included a loss of gain time.

On August 4, 2015, Dixon filed a lawsuit pursuant to 42 U.S.C § 1983 alleging, *inter alia*, that Pollock used excessive force against him on August 12, 2013, in violation of his constitutional rights.  Pollock moved to dismiss the complaint for a failure to exhaust administrative remedies and for lack of subject matter jurisdiction under *Heck*, and Pollock further moved for summary judgment. The Magistrate Judge issued a Report and Recommendation ("R&R")

---

[1] Indeed, Dixon has not provided evidence at this stage of a medical professional verifying any of the injuries in his complaint, other than some alleged unverified hearsay statements from a prison nurse.

recommending that Pollock's motion to dismiss be granted on the basis of *Heck* (but that it was due to be denied on exhaustion grounds) and recommending that Pollock's motion for summary judgment be denied as moot. The District Court adopted the R&R and dismissed the complaint, and Dixon filed this appeal.

III.

"[A]s long as it is possible that a § 1983 suit would not negate the underlying [punishment], then the suit is not *Heck*-barred." *Dyer*, 488 F.3d at 879–80. *Heck* bars a § 1983 suit only when it is a "logical necessity" that judgment for the plaintiff in that suit would contradict the existing punishment. *Id.* at 879. So long as "there would still exist a construction of the facts that would allow the underlying [punishment] to stand," a § 1983 suit may proceed. *Id.* at 880.

Pollock admits, in an accurate statement of the law, that "[i]t is possible for an excessive-force action and a battery conviction to coexist without running afoul of *Heck*." Appellee Br. at 5; *see also Willingham v. Loughnan*, 261 F.3d 1178, 1183 (11th Cir. 2001), *rev'd on other grounds*, 537 U.S. 801, 123 S. Ct. 68 (2002). A prisoner may be punished for battery on a prison guard, and that prison guard may be held liable for using excessive force on the prisoner in subduing him; both may be true. At first glance, then, it appears *Heck* is inapposite.

Pollock contends that *Heck* nonetheless applies here because Dixon alleges that he did not lunge at Pollock before Pollock used force against him. Because

5

Dixon's disciplinary punishment is grounded in those facts, and Dixon is alleging contrary facts in his § 1983 complaint, Pollock claims that *Heck* should bar the suit.

We have recognized that, in some cases, *Heck* may bar a prisoner's suit "if his § 1983 complaint makes specific factual allegations that are inconsistent with the facts upon which his [punishment was] based." *Dyer*, 488 F.3d at 883 n.9. This footnote in *Dyer*, relied upon by Pollock, is a recitation of the inconsistent-factual-allegations rule from *McCann v. Neilsen*, 466 F.3d 619 (7th Cir. 2006).

*McCann* is a Seventh Circuit decision that reversed a district court's dismissal of a § 1983 complaint under *Heck*.[2] It approvingly discusses the

---

[2] In that case, the police sought McCann for allegations of violence against his estranged girlfriend. *McCann*, 466 F.3d at 620. A police deputy encountered McCann walking along some railroad tracks. *Id.* McCann began to run from the deputy, then "stopped, turned, produced a 'spike-type' weapon from his pocket, and began walking directly toward the deputy." *Id.* The deputy commanded him to stop, but McCann continued to advance. *Id.* The deputy fired a single shot that struck McCann. *Id.* McCann was later convicted of aggravated assault on the deputy. *Id.*

McCann then brought a § 1983 suit against the deputy. In his complaint, he made the following allegations:

> 5. On November 9, 2001, the plaintiff was lawfully present at the approximate location of Ridgefield Road and Country Club Drive at or about the railroad tracks in Ridgefield, in the Northern District of Illinois.

> 6. At the time and date aforesaid, the plaintiff did not pose a threat of violence or great bodily harm to the defendant, was not in the commission of a forcible felony nor was he attempting to resist, escape or defeat an arrest otherwise [*sic*] acting so as to justify the use of deadly force by the defendant.

> 7. That on the date and time aforesaid, the defendant, without justification, shot the plaintiff causing serious injury.

inconsistent-factual-allegations rule, an "additional gloss on the *Heck* analysis," only in the context of one case: *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003). *McCann*, 466 F.3d at 621.

In *Okoro*, the plaintiff brought a § 1983 suit following his conviction of a drug crime after heroin was discovered in a search of his home. *Id.* at 622. His defense in the criminal drug case was that he sold gems, not heroin, and that police officers had stolen his gems during their search. *Id.* After his drug conviction, he alleged in his § 1983 complaint that the police officers who searched his home had violated his civil rights by illegally seizing his gems. *Id.* The Seventh Circuit determined that the plaintiff's suit was barred under *Heck* because his § 1983 suit had the effect of "challenging the validity of the guilty verdict by denying that there were any drugs and arguing that he was framed." *Okoro*, 324 F.3d at 490.

---

*Id.* The district court determined that *Heck* barred McCann's suit because he "had voluntarily steered the action into *Heck* territory by making specific factual allegations in the complaint that were inconsistent with the facts upon which" his conviction was based. *Id.* at 621. Because McCann chose to plead that he did not pose a threat of violence, that he did not act in a manner that justified the use of deadly force, and that the deputy shot him without justification, the district court determined that he created a complaint impossibly inconsistent with his assault conviction, and *Heck* barred it. *Id.*

The Seventh Circuit reversed. It determined that the district court did not give McCann "the benefit of all reasonable inferences" and did not appropriately view his complaint in the light most favorable to him. *Id.* at 622. Had the court done so, it could have read the complaint as a claim that McCann "never posed a threat of violence, attempted escape, or resisted arrest *to a degree* that would have justified the use of deadly force as a response." *Id.* This claim, when so construed, was not necessarily inconsistent with McCann's assault conviction. *Heck* did not bar the § 1983 suit.

7

To the extent we adopted the inconsistent-factual-allegation gloss on *Heck* in our *Dyer* decision, we agree with the Seventh Circuit that it is only apposite in the narrow category of cases like *Okoro*: where the allegation in the § 1983 complaint is a specific one that both necessarily implies the earlier decision is invalid *and* is necessary to the success of the § 1983 suit itself.  The "logical necessity" of conflict between the punishment and the § 1983 suit, itself "at the heart of the *Heck* opinion," is present only in these circumstances.  *Dyer*, 488 F.3d at 879.  When a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit, the *Heck* bar does not apply.

Such is the case here.  The gravamen of Dixon's § 1983 complaint is that Pollock used excessive force against him.  The success of this claim is not necessarily dependent on whether Dixon lunged at Pollock or not.  His disciplinary punishment, of course, establishes that he did.[3]  But that factual finding is not determinative of whether Pollock used excessive force against Dixon.  It is logically possible both that Dixon lunged at Pollock and that Pollock used excessive force against him.  Because "there is a version of the facts which would

---

[3] At this stage, a court may determine that Dixon does not dispute this fact in his complaint.  Construing Dixon's complaint in the light most favorable to him, it is possible to read the Statement of Facts as silent on what transpired between the time he turned to walk away from the officers' station and the time that Pollock began to use force against him.  Pollock contends that it was during this period that Dixon formed a fist with his hand and lunged at him.

allow the [punishment] to stand" alongside a successful § 1983 suit, *Heck* does not control. *Id.* at 883.

## IV.

We conclude that *Heck* and its progeny, including *Balisok*, do not bar this lawsuit. On the contrary, *Dyer* requires that the suit be allowed to proceed through the threshold gates of *Heck*. We therefore vacate the judgment of the District Court and remand for further proceedings not inconsistent with this opinion.

**VACATED AND REMANDED.**