[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14247

_____

WENDALL JERMAINE HALL,

Plaintiff-Appellant,

*versus*

LIEUTENANT PETER MEROLA,

Defendant-Appellee,

SERGEANT CHARLES WATSON, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:15-cv-01054-BJD-PDB

_____

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

ROSENBAUM, Circuit Judge:

This is one *Heck* of an appeal.  That's because resolution of the appeal turns in large part on the proper application of the Supreme Court precedent known as *Heck v. Humphrey*.[1]  In a nutshell, *Heck* precludes a convicted person from pursuing a civil claim for damages under § 1983 if, because of what the elements of his civil claim require him to prove, a decision in his favor on that claim would necessarily call into question the validity of his criminal conviction.

Here, we must determine whether resolution of Plaintiff-Appellant Wendall Hall's § 1983 lawsuit against correctional officers would necessarily require a determination going to the validity of a prison disciplinary finding against Hall.  If so, we must affirm the district court's dismissal of Hall's lawsuit.  If not, we must vacate and remand in part.

Hall sued three Defendant-Appellee correctional officers under § 1983 for alleged violations of his First and Eighth Amendment rights.  While Hall was in his prison cell, two correctional officers

_____

[1] 512 U.S. 477 (1994).

sprayed a chemical agent on him.  The parties contest why the officers did this:  Hall says it was in retaliation for his protected speech; the correctional officers respond that it was to stop Hall from tampering with a sprinkler in his cell.  Ultimately, Hall was found guilty of tampering with the sprinkler.  Shortly after that, Hall alleges that a supervising officer instructed the prison staff not to feed him—again, in retaliation for Hall's protected speech.  Hall sued the two officers and the supervising officer for violating his First and Eighth Amendment rights.

The district court dismissed Hall's claims against the two correctional officers under *Heck v. Humphrey* because it concluded that the success of Hall's claims required a showing that his prison-disciplinary conviction was invalid.  But although the district court dismissed Hall's claims for compensatory and punitive damages against the supervising officer, it allowed Hall's demand for nominal damages to go to trial.  Over Hall's objection, the district court instructed the jury that it could award Hall only nominal damages. The jury returned a verdict for the supervising officer.

After a thorough review of the record and with the benefit of oral argument,[2] we vacate the district court's dismissal of Hall's claims against the two correctional officers:  *Heck* does not bar Hall's Eighth Amendment claim, and even if *Heck* applies to Hall's First Amendment claim, Hall is entitled to leave to amend.  As for

---

[2] We appointed Patrick C. Valencia to represent Hall on appeal.  We appreciate Mr. Valencia's service to the Court.

Hall's claims for compensatory and punitive damages, we agree with Hall that the district court erred in dismissing them. That's so because the Prison Litigation Reform Act doesn't apply to this removed action. And though we conclude that the district court's jury instruction was erroneous, we find that error harmless. So we vacate and remand in part and affirm in part.

## I.  BACKGROUND

### A.  Factual Background

In 2014, Wendall Hall was incarcerated in Florida's Columbia Correctional Institution.[3] Doc. 9 at 1. On January 31, two correctional guards, Officers Watson and Wright, went to the door of Hall's cell. *Id.* at 14. According to the complaint, the officers told Hall that they were going to "gas" him because he was "a black n[*****], who ha[d] many past disciplinary reports for masturbation" and because Hall had "file[d] [l]awsuits and grievances against correctional officers and [was] testifying in trial against [another correctional officer,] Officer Bennett." *Id.*

True to their word, the officers returned to Hall's cell, opened the food flap, and sprayed Hall in his face and chest with chemical agents, causing Hall to suffer "severe physical pain in his face, chest, eyes" and to be "unable to see out of his eyes, [have]

---

[3] Because the district court dismissed Hall's claims against the two correctional officers (Officers Watson and Wright) at the motion-to-dismiss stage, for purposes of our review, we must consider the allegations in Hall's complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The facts may or may not be as Hall's complaint alleges.

blurry vision, [and suffer] difficulty and severe physical pain when breathing, severe burning and itching of skin, bleeding out of buttocks and severe chest pain and long[-]lasting mental pain [and] severe mental injury." *Id.*

Hall denied tampering with the sprinkler in his cell, *id.*—the reason the officers later gave for spraying Hall.

A week later, on February 7, another officer—Lieutenant Peter Merola—went to Hall's cell to say that he was "going to order his officers not to feed [Hall] any food" to "teach [Hall] a lesson about filing so many grievances." *Id.* at 15. Lieutenant Merola also made good on his word. *Id.* Correctional officers did not give Hall any food on February 8th and 9th and told Hall that they were not giving him food on Lieutenant Merola's orders. *Id.*

### B. Procedural History

Hall sued Officers Wright and Watson and Lieutenant Merola in state court in July 2015. He asserted First and Eighth Amendment claims against Officers Watson and Wright for deploying chemical agents against him because he filed grievances and gave testimony in a case against another prison guard. And Hall alleged that Lieutenant Merola had violated his First and Eighth Amendment rights by instructing officers not to feed Hall in retaliation for filing grievances. Hall sought compensatory and punitive damages.

The defendants removed the case to federal court, invoking federal-question jurisdiction. After removal, at the defendants' request, the magistrate judge required Hall to file a new complaint

on the Middle District of Florida's standard prisoner civil-rights complaint form.  Hall complied, filing an "Amended Complaint."

The officers moved to dismiss the claims against them, asserting three reasons.  First, Officers Watson and Wright said the claims against them were barred by *Heck*.  They attached a disciplinary report that adjudicated Hall guilty of attempting to break the sprinkler in his cell.  The report also explained that, when Hall refused to stop, the officers used force to compel Hall to stop.  The report stripped Hall of 20 days of "gain time" and ordered 30 days of "disciplinary confinement."  Because Hall had been found guilty of tampering, the officers said, *Heck* barred the claims against them based on their spraying of chemical agents on him.  Second, all three officers (including Lieutenant Merola) said that Hall wasn't entitled to compensatory or punitive damages because, under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), prisoners could recover those damages only in cases with actual physical injuries, which Hall hadn't alleged.  And third, they asserted Eleventh Amendment (but not qualified) immunity.

Hall responded that *Heck* wasn't applicable because he did "not request injunctive relief for restoring gaintime credits los[t] from disciplinary report and d[id] not seek injunctive relief for earlier or speedier release from prison so his monetary relief if granted will not cause a speedier or earlier release of plaintiff from prison[.]"

The district court granted the motion in part and denied it in part.  The district court agreed with Officers Watson and Wright

that *Heck* barred Hall's claims against them because Hall contended that he "was subjected to chemical gassing for reasons other than he was tampering with a safety device and refusing to obey verbal orders to cease his actions—a claim that would necessarily imply the invalidity of the punishment imposed." The district court noted in a footnote that this was "not a case in which Plaintiff admitted that yes, he tampered with the security device . . . but the officers used excessive force in subduing him. Instead, Plaintiff alleges in his [c]omplaint that he was not tampering with a safety device in his cell and Defendants Watson and Wright chemically gassed him for various retaliatory or discriminatory reasons." The district court accordingly dismissed Officers Watson and Wright from the case.

As to the remaining defendant (Lieutenant Merola), the district court struck Hall's claims for compensatory and punitive damages because Hall's claimed injuries—hunger pangs—didn't constitute a physical injury as required under the PLRA. But the district court found that Hall had stated viable First and Eighth Amendment claims against Lieutenant Merola, so it denied the defendants' motion as to those claims. The district court rejected the officers' claims to Eleventh Amendment immunity because Hall sued the officers in their individual capacities, not their official capacities.

Just a week later, Hall sought leave to file an amended complaint. He said that he would add dates that Lieutenant Merola ordered him not to be fed (adding February 7 and 18 to the list) and

more facts to show that he had suffered a physical injury. As to Officers Watson and Wright, Hall asked for leave to replead his claims to add a denial-of-medical-care claim. Hall also argued that his complaint wasn't *Heck*-barred because *Heck* didn't apply to all claims involving prison disciplinary actions, just those that would impact the time the prisoner would be incarcerated. Hall attached an affidavit, sworn under penalty of perjury, that after using the gas, the officers ordered a nurse not to treat Hall's injuries, prolonging Hall's pain.

The district court denied Hall's motion. In the district court's view, Hall sought to amend his complaint for reasons that appeared "dubious, financially motivated, and not made in good faith." "Realizing that no claims for compensatory and punitive damages remain," the district court said, Hall was (1) seeking to "change the character of his complaint"—to add a new claim against Watson and Wright and (2) to enhance his allegations—to add details his allegations of physical injury allegedly caused by Lieutenant Merola—to circumvent the court's ruling. The district court added that the defendants' assertions—that Hall had unduly delayed amendment and that Hall was proceeding in bad faith—were "well founded" because Hall was an experienced pro se litigant and had solicited a ruling on the motion to dismiss without seeking leave to raise new claims.

The case, now consisting solely of First and Eighth Amendment claims against Lieutenant Merola and seeking only nominal damages, continued past summary judgment and on to trial.

In June 2018, the district court appointed Hall counsel. In August 2018, Hall's new counsel moved to file a Second Amended Complaint and to reopen discovery. He explained that he wanted to add allegations about physical injury—specifically, that Hall suffered from Gastroesophageal Reflux Disease ("Reflux") and Crohn's disease and had been prescribed a special diet for these conditions. When these conditions flared up, he explained, Hall suffered the debilitating chest pain described in the complaint. Hall's counsel asked to provide supporting medical records showing that Hall had suffered a physical injury. The proposed Second Amended Complaint also alleged that Hall hadn't been fed from August 7, 2014 until August 10, 2014.

The district court denied the motion to file a Second Amended Complaint. Noting that the case had been pending for years, the court said that the proposed amended complaint attempted to relitigate old issues when it sought to add allegations of medical diseases and to inject new issues, like that Hall hadn't been fed in August 2014. The court explained that the case was on the brink of trial, so, the court concluded, it would be prejudicial to Lieutenant Merola to allow Hall to amend his complaint.

Hall proceeded to trial against Lieutenant Merola on his First and Eighth Amendment claims. At trial, Hall testified that he was denied food as retaliation for grievances that he filed. He said that Lieutenant Merola's theory—that Hall purposefully starved himself in February 2014—was implausible because Hall had medical conditions that would have made starvation dangerous. Plus,

Hall said, he had a trial that month for which he needed to be prepared. Hall also called a fellow inmate who testified that he saw the officers refuse Hall food on the days in question. Hall submitted his medical records—documenting his Reflux—into evidence.

At the end of the first day of the trial, Hall moved to reinstate his claims for compensatory and punitive damages and, under Rule 15(b), to conform the pleadings to include the allegations about his Reflux. The district court denied the motion, concluding it would prejudice Lieutenant Merola because of the surprise.

In his case, Lieutenant Merola called several jail officials and himself—all of whom testified that Lieutenant Merola never directed them to withhold food from Hall and that, even if Lieutenant Merola had, they would have fed Hall anyway. Lieutenant Merola also called the warden of the jail, who testified that Lieutenant Merola wasn't on duty on two of the dates Hall alleged he wasn't fed (February 8 and 9).

After the close of evidence, the district court instructed the jury as follows:

> If your verdict is in favor of Peter Merola with respect to each claim, you will go no further. But if your verdict on one or both claims is for Wendall Hall, you will consider the issue of damages. **Where, as here, any physical injury an inmate suffers is minimal, the law allows an inmate to recover nominal damages.** This is because a person whose constitutional rights were violated is entitled to a recognition of that

> violation, even if he suffered only minimal injuries. Thus, if your verdict is for Wendall Hall on either claim, you should award Wendall Hall nominal damages not to exceed one dollar.

Doc. 261 at 180 (emphasis added). Hall objected to the reference that his injuries were minimal and asked for an "open-ended nominal damages jury instruction." The district court overruled both requests without explanation.

The district court also instructed the jurors (in Jury Instruction 3) that they "should not assume from anything [the district court said] that [the district court] [had] any opinion about any factual issue in this case. Except for [the district court's] instructions to [the jury] on the law, [the jury] should disregard anything [the district court] may have said during the trial in arriving at [the jury's] own decision about the facts." Jury Instruction 4 directed the jurors to decide for themselves whether to believe each witness. Jury Instruction 5 told jurors to assess witnesses' credibility and decide whether misstatements were unintentional or intentional. And Jury Instruction 10 directed that "the fact that [the district court] [gave] instructions concerning the issue of damages should not be interpreted in any way as an indication that [the district court] believe[s] that Wendall Hall should or should not prevail in this case."

During closing arguments, Hall's counsel emphasized that Hall wasn't fed and emphasized that an injury "[did] not have to be

a broken arm or a broken leg" to qualify as a legally cognizable injury. Hall's counsel reminded the jury that Hall had stomach-related conditions and "was at risk for being harmed as a result of not receiving food." And Hall's counsel concluded that, "even without those medical problems, going three days without food hurts. It's not a pleasant experience. So even holding that aside, the hunger pains that Mr. Hall felt, not being able to stand up straight because he was so hungry, that's an injury under the law, folks."

The jury returned a verdict on both counts for Lieutenant Merola. Hall timely appealed. While this case was on appeal, Hall was released from incarceration and was civilly committed.

## II.    STANDARDS OF REVIEW

We review de novo a motion to dismiss based on *Heck v. Humphrey*. *Dixon v. Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018).

As for denial of leave to amend, we review that for an abuse of discretion. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1199 (11th Cir. 2001).

On jury instructions, we will reverse "only if we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1005 (11th Cir. 1997) (citation omitted).

## III.    DISCUSSION

We divide our discussion into two parts. First, we discuss Hall's claims against Officers Watson and Wright. And second, we analyze Hall's claim against Lieutenant Merola.

20-14247                Opinion of the Court                13

A.      *Claims Against Officers Watson and Wright*

Hall contends that the district court erred in dismissing his First and Eighth Amendment claims as barred by *Heck* because, given that he isn't in custody, *Heck* doesn't apply. And even if *Heck* applies, Hall continues, it doesn't bar his Eighth Amendment claim because prevailing on his excessive-force claim wouldn't "necessarily" invalidate his underlying conviction. Finally, Hall concludes that he should receive leave to amend.

Officers Watson and Wright respond that *Heck* applies even to claims brought after the plaintiff leaves custody. Next, they contend that Hall presented his Eighth Amendment claim differently to the district court. In other words, they say, Hall claimed in the district court that the officers engaged in excessive force because they gassed him for no reason at all—and if that premise were accepted, it would invalidate Hall's conviction for tampering with the sprinkler in his cell. But on appeal, the defendants assert, Hall implicitly concedes that he was tampering with the sprinkler system but claims for the first time that the officers' use of gas to prevent him from doing so amounted to excessive force. Finally, even if we conceptualize Hall's claim as one of excessive force in response to Hall's tampering with the sprinkler system, the defendants say that they are entitled to qualified immunity because no clearly established law put them on notice that their conduct was unlawful.

We proceed in four steps. First, we discuss the Supreme Court's decision in *Heck*. Second, we explain why Hall's Eighth Amendment claim survives *Heck*. Third, we turn to Hall's First Amendment claim and show that whether that claim survives *Heck*

depends, not on whether *Heck* applies to out-of-custody plaintiffs, but on how that claim is construed. Ultimately, we conclude that we need not decide how to construe Hall's First Amendment claim because, fourth, we hold that Hall is entitled to leave to amend.

### 1. Heck

We begin with *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the plaintiff—who was imprisoned for manslaughter—sued prosecutors and a police investigator under 42 U.S.C. § 1983 for damages because of their alleged unreasonable investigation, purported destruction of exculpatory evidence, and use of "an illegal and unlawful voice identification procedure" at Heck's trial. *Id.* at 479. Heck did not seek to be released from custody in his § 1983 action. *Id.*

The Court determined that Heck's action must be dismissed. *Id.* at 490. In reaching this conclusion, the Court considered the nature of Heck's claim—that is, whether it properly sounded in habeas or as a § 1983 action. *See id.* at 480–87. To be sure, Heck characterized it as a § 1983 claim. But the Court described Heck's claim as "l[ying] at the intersection" of habeas corpus and § 1983. *Id.* at 480.

As the Court explained, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Id.* at 481. Section 1983, in contrast, "creates a species of tort liability." *Id.* at 483. The Court pointed out that, while Heck's suit didn't seek

a speedier release, it did call into question the lawfulness of his conviction. *Id.* at 482–83. So while the Court categorized Heck's suit as falling under § 1983, it still found that the suit wasn't cognizable. *Id.* at 483.

That was so because the Court analogized Heck's particular § 1983 claim to the common-law cause of action for malicious prosecution. *Id.* at 484. This characterization of Heck's specific claim was critical to the rest of the Court's analysis because the elements of a common-law malicious-prosecution claim required the plaintiff to show termination of the prior criminal proceeding in his favor. *Id.* at 484. In other words, as an element of his malicious-prosecution-like claim, a successful plaintiff must show that either he was not convicted or that his conviction has been invalidated or otherwise set aside. *Id.* Because Heck's conviction was still valid, the Court reasoned, permitting Heck to proceed with his action under § 1983 would necessarily allow Heck to engage in an impermissible "collateral attack on [his] conviction through the vehicle of a civil suit." *Id.* (citation and quotation marks omitted).

So the Court held that Heck could not proceed with his claim. *Id.* at 490. Rather, the Court explained, "to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [invalidated or otherwise set aside]." *Id.* at 486–87 (footnote omitted). And a district court must dismiss a prisoner's § 1983 suit seeking damages if "a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the conviction or sentence has already been invalidated. *Id.* at 487. As relevant here, the Supreme Court later extended the *Heck* rule to apply to prison disciplinary convictions. *Edwards v. Balisok*, 520 U.S. 641, 645–48 (1997).

### 2. Eighth Amendment Claim

Hall first says that *Heck* does not bar his excessive-force claim. We agree.

"*Heck* bars a § 1983 claim only when it is a 'logical necessity' that judgment for the plaintiff in that suit would contradict the existing punishment." *Dixon*, 887 F.3d at 1239 (quoting *Dyer v. Lee*, 488 F.3d 876, 879 (11th Cir. 2007)). Factual allegations bar claims under *Heck* in only narrow circumstances: "where the allegation in the § 1983 claim is a specific one that both necessarily implies the earlier decision is invalid *and* is necessary to the success of the § 1983 suit itself." *Id.* "When a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his § 1983 suit, the *Heck* bar does not apply." *Id.*

Applying that guidance here, we must conclude that the district court erred. If a factual allegation contradicts a guilty verdict, our case law requires district courts to consider whether the fact is "necessary" to the success of the § 1983 suit itself. *Dixon*, 887 F.3d at 1239. Here, Hall's factual allegation—that he wasn't tampering with the sprinkler system—could be false and Hall could still

20-14247                    Opinion of the Court                    17

succeed on his lawsuit if Officers Watson and Wright used more force than constitutionally permissible in stopping Hall from tampering with the sprinkler system. That is, Hall's denial of tampering with the sprinkler isn't "necessary" to the success of his excessive-force claim. As Judge Easterbrook explained in *Gilbert v. Cook*, "[i]f [Hall] had been willing to concede" that he was guilty, "he would have had clear sailing" on his § 1983 claim. 512 F.3d 899, 901 (7th Cir. 2008). But a Hall confession—"a confession that might facilitate a criminal prosecution on top of the prison discipline"—is not "a precondition to a civil remedy against public officials who respond with excessive force." *Id.*[4]

---

[4] Judge Newsom's thoughtful concurrence on this point is, really, we think just a question of semantics. Here's why: Hall sued for excessive force. The question is whether Hall's factual allegation—that he didn't tamper with the sprinkler—means that *Heck* bars his claim. Judge Newsom agrees that, if Hall *admitted* tampering, then there'd be no problem with Hall's suit because an officer can use more force that constitutionally permissible—that is, excessive force—in effecting discipline that is otherwise warranted. Newsom Concurrence at 2. But that agreement means Hall's denial that he tampered with the sprinklers isn't "necessary" to success in his suit. In other words, if we removed that factual allegation, or flipped it to an admission, Hall's suit could succeed just the same. All Hall needs to do is show that the officers used excessive force. So the denial isn't logically necessary. Consider our prior precedent, *Dixon*, where the plaintiff was found guilty in prison disciplinary proceedings of battery on a correctional officer but sued that same officer for excessive force. 887 F.3d 1235, 1239–40 (11th Cir. 2018). He—as Hall does here—*denied* committing an underlying infraction. *Id.* We said that the denial didn't bar his claim because "[t]he success of this claim is not necessarily dependent on whether Dixon lunged at Pollock or not. His disciplinary punishment, of course, establishes that he did. But that factual finding is not

Officers Watson and Wright don't dispute this analysis. Instead, they raise two counterarguments.

First, they say, Hall didn't make this argument in the district court, so it isn't properly before us. We disagree. In responding to the Officers' motion to dismiss, Hall argued that he wasn't seeking to overturn his disciplinary finding that he tampered with the safety device. He said that his suit, if successful, wouldn't expunge his disciplinary conviction, overturn it, or restore lost "goodtime" credits; all he would get, he said, was money. His tampering charge, he concluded, was "incidental" to his claims of excessive force. The argument is properly preserved.

Second, the Officers respond that they are entitled to qualified immunity. But the Officers did not raise this issue in the district court. Instead, they raised only the issue of Eleventh Amendment

---

determinative of whether Pollock used excessive force against Dixon." *Id.* at 1239–40 (footnote omitted). The point is this: a factual allegation that denies the truth of a disciplinary conviction doesn't mean that *Heck* bars the suit if—as is the case here—the plaintiff could succeed if he or she admitted the truth of the disciplinary conviction. *See id.* at 1238 ("A prisoner may be punished for battery on a prison guard, and that prison guard may be held liable for excessive force on the prisoner in subduing him; both may be true."). To the extent Judge Newsom contends that Hall couldn't succeed on an "I didn't do it" theory, we agree that Hall couldn't use a § 1983 suit to overturn his disciplinary conviction. But that doesn't mean his excessive-force claim is *Heck*-barred because the validity or invalidity of Hall's disciplinary conviction is irrelevant to whether the officers used excessive force against him. *See id.* at 1240 ("It is logically possible both that [the prisoner] lunged at [the guard] and that [the guard] used excessive force against him.").

20-14247                Opinion of the Court                19

immunity. Given this omission, they have forfeited this argument. *See Caban-Wheeler v. Elsea*, 71 F.3d 837, 842 (11th Cir. 1996).

### 3.  First Amendment

We next turn to Hall's First Amendment claim. Hall alleged that Officer Wright violated the First Amendment by "unlawfully gassing [Hall] with chemical agents because [Hall] file[d] lawsuits and grievances against correctional officers."

The parties disagree about whether *Heck* applies to Hall now that Hall is no longer in custody on his criminal convictions.[5] They spend much of their briefs on the topic—a question that has

---

[5] Hall completed his sentence in July 2019 and says that he is now civilly committed. So Hall is "in custody" for habeas purposes. *See Duncan v. Walker*, 533 U.S. 167, 176 (2005) (explaining that a state order of civil commitment satisfies the "in custody" requirement); *United States v. Searcy*, 880 F.3d 116, 120 (4th Cir. 2018) ("A person may also challenge his civil commitment collaterally through habeas corpus proceedings."). But importantly, Hall isn't "in custody" for the conviction he is complaining about—the sprinkler tampering charge—so habeas for that claim isn't available. That is because, to file a habeas petition, Hall must be "in custody" because of the conviction he attacks. *See Stanbridge v. Scott*, 791 F.3d 715, 717 (7th Cir. 2015) ("Stanbridge's civil commitment is merely a collateral consequence of his criminal conviction, and thus insufficient to render Stanbridge in custody pursuant to that [criminal] conviction."); *cf. Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 401–02 (2001) ("Coss is no longer serving the sentences imposed pursuant to his 1986 convictions, and therefore cannot bring a federal habeas petition directed solely at those convictions" while distinguishing that a prior conviction used to *enhance* a *current* sentence could be collaterally attacked). Because Hall has completed his state criminal sentence (for which he lost "gaintime" credits), he isn't "in custody" because of that sentence.

divided our sister circuits.  But we can decide this appeal without resolving this thorny question.

As we've mentioned, Hall alleged that Officers Wright and Watson violated the First Amendment by "unlawfully gassing [Hall] with chemical agents because [Hall] file[d] lawsuits and grievances against correctional officers."  Officers Wright and Watson argue that this claim is most similar to a malicious-prosecution claim, though they don't say why.  And Hall himself never explains which common-law tort he thinks is most analogous to his claim.

As for us, we don't think it's clear that a malicious-prosecution claim is the best fit here.  After all, when we look at Hall's claim, Hall doesn't seem to be complaining that he was aggrieved by the disciplinary report (and accompanying loss of "gaintime") but rather by the use of the gas itself.  To be sure, if Hall's claim is that the guards fabricated a sprinkler-system charge to justify their use of gas on him, then his claim would seem to be most analogous to a malicious-prosecution claim because the wrong would be about the alleged misuse of the prison disciplinary system.  We agree that that claim would be barred.  *See Williams v. Radford*, 64 F.4th 1185, 1195 (11th Cir. 2023) ("Under our precedent, if an inmate is 'found guilty of an actual disciplinary infraction after being afforded due process,' and 'there was evidence to support the disciplinary panel's fact finding,' he cannot assert a retaliation claim.") (quoting *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011)).

But on the other hand, if Hall's claim complains that the guards used chemical agents on him to retaliate against him for his

First Amendment protected speech (in the form of filing prison grievances), then the most analogous tort might be battery because the wrong in that case is about the use of force.

And battery can be part of a First Amendment-retaliation claim. "To state a § 1983 First Amendment retaliation claim, a plaintiff generally must show: (1) she engaged in constitutionally protected speech, such as her right to petition the government for redress; (2) *the defendant's retaliatory conduct adversely affected that protected speech and right to petition*; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) (emphasis added). The analogous common-law tort, then, is the retaliatory conduct— the second prong.

In the usual case, the retaliatory conduct is an arrest or a prosecution. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019). That is, the government arrests or prosecutes someone for their protected speech. *Id.* In those cases, we look to the common-law torts of false arrest or malicious prosecution. *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (explaining a warrantless arrest is analogous to false arrest and an arrest with a warrant is analogous to malicious prosecution).

But a First Amendment retaliation claim can use any sort of adverse action at its second element: a civil lawsuit, *see DeMartini*, 942 F.3d at 1298–99, 1301, or the termination of employment, *Lane v. Franks*, 573 U.S. 228, 243 (2014), for instance. Or, as relevant here,

the use of force.  We see no reason why Hall cannot rely on the use of force to satisfy the "adverse action" prong.

Other circuits agree.  The Eighth Circuit, for instance, has recognized that excessive force could constitute an adverse action in a First Amendment claim.  *See Burbridge v. St. Louis*, 2 F.4th 774, 781 (8th Cir. 2021) ("The adverse action alleged here [in this First Amendment retaliation case] is the use of excessive force.  On appeal, Officer Biggins argues only that he did not use excessive force and thus there was no adverse action. . . . Rather, as explained above, his sole argument for reversal is that if Drew's excessive force claim fails, the First Amendment claim necessarily fails as well.").  So has the Seventh.  *See, e.g.*, *Coady v. Steil*, 187 F.3d 727, 733 (7th Cir. 1999) ("The remaining question before us is whether it was 'clearly established' on March 18, 1995 that a government official could not retaliate against a subordinate's protected exercise of political speech by hitting him.").

Indeed, the Seventh Circuit thought "it [was] clear that being punched in the face would deter anyone from exercising his or her First Amendment rights."  *Id.*  We have no trouble reaching the same conclusion about being sprayed in the face with gas.

So that raises the question of which claim Hall is advancing.  Is Hall complaining that Officer Wright instigated a disciplinary action against him for his speech?  Or is Hall instead saying that Officer Wright used gas against him to punish him for his speech?  The former might be barred by *Heck* as analogous to a malicious-prosecution claim without a favorable termination, but the latter would

not.  As it turns out, though, we don't need to decide which claim Hall is bringing because we must give him leave to replead.

### 4.  Leave to Amend

Hall also seeks leave to amend his complaint against Officers Watson and Wright.  We agree that the district court abused its discretion in denying Hall an opportunity to amend here.  As a pro se litigant, Hall was entitled to at least one chance to amend his complaint under our precedent.

Rule 15(a) provides that a party may amend its pleading once as a matter of course within 21 days after serving it and, after that, with the opposing party's written consent or the court's leave (which the court should freely give leave when justice so requires).  FED. R. CIV. P. 15(a).

Rule 15 "severely restrict[s]" the district court's discretion to deny leave to amend. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (citation omitted).  In particular, before dismissing a complaint, a district court "must" give a pro se party "at least" one chance to amend the complaint if a more carefully drafted complaint might state a claim. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc).

Hall's first motion for leave to amend sought to add a claim that Officers Watson and Wright were deliberately indifferent to his serious medical needs—namely, that they had had ordered a nurse not to treat Hall's wounds after they had deployed gas, prolonging the pain the gas caused.  The district court denied the

motion because it found that Hall was seeking "to raise entirely new claims concerning the denial of medical care . . . that were not raised in his Amended Complaint." The district court also stated that the defendants' assertions "that there has been undue delay and bad faith in making this request" were "well founded."

We disagree for three reasons. *First*, this motion was Hall's first request for leave to amend. While the operative complaint was an "Amended Complaint," it was "amended" only because the magistrate judge had struck Hall's original complaint for not using the Middle District of Florida's approved prisoner-civil-rights form complaint. But given that Hall had sued in state court (and the defendants had removed the action to federal court), that Hall's complaint was not on the approved form wasn't a shortcoming attributable to Hall. In other words, the Amended Complaint was Hall's *first* complaint. And absent a showing of futility or lack of desire to amend, Hall had to be given at least one chance to amend his claims. *See Bank*, 928 F.2d at 1112.

*Second*, the district court erred in concluding that Hall had unduly delayed seeking leave to amend.[6] As we've noted, the district court ruled on the motion to dismiss on May 17, 2016. Hall moved for leave to amend just a week later. We cannot say that a week's delay is "undue." The delay between the filing of the motion to dismiss (in October 2015) and Hall's motion for leave to

---

[6] We assume without deciding that bad faith and undue delay can be reasons to deny a pro se plaintiff at least one opportunity to amend.

amend (in May 2016) just reflects the time the district court used to adjudicate the motion. *Cf. In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014) ("Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, *undue* delay may clearly support such a denial.") (citation omitted).

We also don't think that Hall improperly delayed seeking amendment between filing his complaint in state court in July 2015 and moving for leave to amend in May 2016, because we are cognizant that "the original complaint was filed by the plaintiff pro se while a prisoner in the state prison system." *Stevens v. Gay*, 792 F.2d 1000, 1005 (11th Cir. 1986). Nor had a court-ordered discovery deadline passed that would have barred discovery into Hall's new allegations. *See Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (affirming denial of leave to amend after the end of discovery). No doubt the defendants would have preferred denial of leave to amend. But at bottom, "[t]he lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint." *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001).

*Third*, we are skeptical that the district court properly concluded that Hall sought leave to amend in bad faith. Bad faith can be shown where "an attorney knowingly or recklessly raises a frivolous argument[] or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by

delaying or disrupting the litigation[.]" *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). We've affirmed sanctions based on bad faith even against non-lawyer parties. *Cf. Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021).

Here, though, the record contains no indication that Hall sought to advance a frivolous legal theory: he wanted to add allegations that Officers Wright and Watson prevented a nurse from treating his injuries from the use of gas. That seems to us to be a perfectly legitimate Eighth Amendment claim—maybe meritorious, maybe not, but not frivolous. Nor does the record include any indication that Hall sought to harass Officers Wright and Watson in particular. As far as we can tell, this lawsuit is Hall's first against them. Finally, to the extent that the district court found Hall's desire to amend to be "financially-motivated"; we'd be remiss if we didn't note that the majority of litigation has at least some financial motivation. In other words, given the costs of litigation generally, that Hall wanted to proceed with his claims only if he could recover more than nominal damages does not strike us as showing bad faith.

In sum, we think the district court abused its discretion in not giving Hall at least one chance to amend his claims against Officers Watson and Wright.

### B. Claim Against Lieutenant Merola

Hall argues the district court erred in four ways in its rulings on Hall's claim against Lieutenant Merola. *First*, he says that the district court was wrong to dismiss his claims for punitive and

compensatory damages. *Second*, he contends that the district court erred in denying his counseled motion for leave to amend. *Third*, he argues that the district court erred in denying his mid-trial Rule 15(b) motion to conform his complaint to the evidence. And, *fourth*, he urges us to conclude that the district court erred in instructing the jury that Hall was entitled to only nominal damages. We will take each in turn.

### 1. Compensatory and Punitive Damages

As preliminary matter, Hall asserts that the district court erred in dismissing his claims for compensatory and punitive damages under § 1997e(e) because that statute applies to only actions filed in federal court. And his action, he points out, was filed in *state* court and *removed* to federal court. We agree.

Section 1997e(e) imposes a "limitation on recovery" and states that "[n]o Federal civil action *may be brought* by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e) (emphasis added).

We've held that "bringing" an action means "commencing" it, not "maintaining" it. *Maldonado v. Baker Cnty. Sheriff's Off.*, 23 F.4th 1299, 1304 (11th Cir. 2022). Here, Hall filed suit in state court, and the defendants removed the action to federal court. In other words, Hall didn't bring his civil action in federal court, so § 1997e(e) doesn't apply. The district court therefore erred in dismissing Hall's claims for compensatory and punitive damages

pursuant to § 1997e(e).  But given that the jury found that Hall wasn't entitled to even nominal damages, the error doesn't warrant reversal.  More on this below.  *See infra* at 34.

### 2. Counseled Pre-trial Motion for Leave to Amend

Hall also argues that the district court erred in denying his second motion for leave to amend, the one filed shortly after his appointed lawyer joined the case.  Hall's counsel's proposed Second Amended Complaint sought to add new facts from Hall's deposition:  that Hall had lost weight and that he had Crohn's disease and acid reflux.  Hall also wanted to add new dates to when he said that Lieutenant Merola ensured he wasn't fed, adding August 7 to August 10 in addition to the dates in February.  The district court denied the motion because Hall either wanted to add new dates (which would require more discovery) or sought to bolster his allegations to establish physical harm so he could seek compensatory and punitive damages.  The district court found that Hall had unduly delayed in seeking to add these new facts on the eve of trial and after three years of litigation.

As we've said, leave to amend should be "freely given when justice so requires it."  But at the same time, it is "not an automatic right."  *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008).  A district court may "in the exercise of its inherent power to manage the conduct of litigation before it, deny such leave where there is substantial ground for doing so," such as "undue prejudice to the

opposing party by virtue of allowance of the amendment." *Id.* (quoting *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982)).[7]

The district court did not abuse its discretion in denying Hall's second motion for leave to amend. Hall sought leave to amend in August 2018—over three years after he had originally filed suit and less than two months before trial. The case was ready for trial on the claims that Hall had originally made. *Cf. Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (affirming denial of leave to amend forty months after the filing of the counterclaim where the only explanation was the retention of a new attorney). Hall sought to add new dates when Lieutenant Merola allegedly did not feed him. And that would have necessitated deposing new witnesses or re-deposing old ones. Plus, Lieutenant Merola might have needed to retain an expert witness to explain or rebut Hall's claims as to his medical conditions. On the eve of trial, denying leave to amend was well within the district court's discretion.

### 3. Rule 15(b) Motion to Conform

Hall also argues that the district court erred in denying his mid-trial Rule 16(b) motion to amend the complaint to conform to the evidence already admitted at trial.

Rule 15(b) provides that, when a party objects to the admission of evidence that wasn't raised in the pleadings, the court

---

[7] These cases involve counseled plaintiffs, and at the time of these motions, Hall had counsel.

"may" permit amendment when it "will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." FED. R. CIV. P. 15(b)(1). To prevent prejudice, "[t]he court may grant a continuance to enable the objecting party to meet the evidence." *Id.* Determining whether amendment will be prejudicial requires determining "whether [the defendant] had a fair opportunity to defend and whether [the defendant] could offer any additional evidence if the case were to be retried on a different theory." *Doe #6 v. Miami-Dade Cnty.*, 974 F.3d 1333, 1340 (11th Cir. 2020).

When the non-amending party does not object, the proposed amendment "must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue." FED. R. CIV. P. 15(b)(2). We review the denial of a Rule 15(b) motion for an abuse of discretion. *Doe #6*, 974 F.3d at 1337.

We need not decide whether the district court erred in denying amendment because it makes no difference to the outcome here. The jury heard all the evidence Hall sought to add about his medical conditions and medical records. And still, the jury found for Lieutenant Merola. So even if the district court erred in denying leave to amend, any error didn't prejudice Hall.

4.  <u>Jury Instruction</u>

As we've explained, Hall's claim that Lieutenant Merola instructed other officers not to feed Hall went to trial, and the jury found Lieutenant Merola not liable.  In support of his request for a new trial, Hall argues that Jury Instruction 9 was legally incorrect because it limited his damages to nominal damages.  In Hall's view, the instruction was prejudicial because it directed the jury that "any [of Hall's] physical injur[ies]" were minimal, thus impugning Hall's credibility given that Hall had testified to suffering physical injuries. The severity of Hall's injuries was central to his case, Hall says, because the entire case boiled down to whether the jury should have believed Hall or Lieutenant Merola.  So telling the jury that the injuries were minimal—and thus, in Hall's view, not to believe Hall when he testified to severe injuries—placed a thumb on the scale of liability.  We disagree.

As a reminder, Jury Instruction 9 read,

If your verdict is in favor of Peter Merola with respect to each claim, you will go no further.  But if your verdict on one or both claims is for Wendall Hall, you will consider the issue of damages.  **When, as here, any physical injury an inmate suffers is minimal, the law allows an inmate to recover nominal damages.**  This is because a person whose constitutional rights were violated is entitled to a recognition of that violation, even if he suffered only minimal injuries. Thus, if your verdict is for Wendall Hall on either

> claim, you should award Wendall Hall nominal dam-
> ages not to exceed one dollar.

Doc. 241 at 15 (emphasis added). The judge also directed jurors (1) to decide for themselves whether to believe each witness; (2) to assess each witness's credibility; and (3) to not "in any way" construe "the fact that [the district court] [gave] instructions concerning the issue of damages" "as an indication that [the district court] believe[d] that Wendall Hall should or should not prevail in this case." *Id*. at 16

"We will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous and prejudicial." *S.E.C. v. Yun*, 327 F.3d 1263, 1281 (11th Cir. 2003). "In some instances, even an inaccurate instruction may not mandate reversal. If the totality of the instructions properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." *Christopher v. Cutter Lab'ys*, 53 F.3d 1184, 1194 (11th Cir. 1995) (citation omitted).

The charge was legally wrong: as we explained above, the district court erred in limiting Hall to nominal damages. Finding legal error, we turn to prejudice.[8]

---

[8] Lieutenant Merola argues that Hall did not preserve his argument. We disagree. Hall objected to the nominal-damages instruction at the charge conference, and the district court stated that the objections were "noted and overruled for the record and preserved for the record."

20-14247                Opinion of the Court                33

Viewing the jury instructions as a whole, we conclude that Hall was not prejudiced. The jury had the chance to award Hall nominal damages but did not do so. In making this decision, the jury had to consider whether Lieutenant Merola instructed guards not to feed Hall in retaliation for Hall's filing of grievances, not how badly Hall may have suffered if Lieutenant Merola gave such an instruction. Even Hall's counsel conceded during closing arguments that an injury "[did] not have to be a broken arm or a broken leg" to qualify as a legally cognizable injury. And Hall's counsel concluded that "even without those medical problems, going three days without food hurts. It's not a pleasant experience. So even holding that aside, the hunger pains that Mr. Hall felt, not being able to stand up straight because he was so hungry, that's an injury under the law, folks."[9] In other words, as Hall's counsel argued the case, there was no clash between Hall's testimony and the challenged instruction. And because Hall's case turned, not on the

---

[9] One more thing: Hall also argues—in his pro se brief only—that the magistrate judge abused her discretion in denying Hall's motion for sanctions when Merola did not appear for a settlement conference. We disagree. We review a district court's sanctions order for an abuse of discretion. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1237 (11th Cir. 2007). While Lieutenant Merola disobeyed a court order to attend the settlement conference, the magistrate judge found Lieutenant Merola's explanation—that he had overslept after working a night shift and had fallen asleep with his clothes on and his phone beside him—credible. Especially given that this was an isolated incident, we cannot conclude that the court abused its discretion in denying Hall's motion for a default judgment.

severity of his injury, but its existence, we conclude that the jury-instruction error doesn't warrant a new trial.

## IV.    CONCLUSION

We **VACATE** the district court's dismissal of Hall's claims against Officers Watson and Wright and **REMAND** for leave to re-plead and **AFFIRM** the jury's verdict in favor of Lieutenant Merola.

21-12106                Newsom, J., Concurring                1

NEWSOM, Circuit Judge, concurring in part and concurring in the judgment:

I agree with pretty much everything in the majority opinion. I write separately only to offer one tiny clarification.

The majority opinion correctly concludes that, in the particular circumstances of this case, Hall's Eighth Amendment claim isn't barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and is progeny. *See* Maj. Op. at 17–19. For me, though, that conclusion turns on exactly what kind of "excessive force" claim Hall is pursuing. Has he raised only what I'll call an "I didn't do it" claim—*i.e.*, a claim that he didn't tamper with the sprinkler in his cell and, therefore, that any force that Officers Watson and Wright used to subdue him was, by definition, constitutionally excessive—or has he also raised an "I did it but the force used to subdue me was nonetheless constitutionally excessive" claim?

As the majority opinion explains, the district court seemed to think that Hall had presented only an "I didn't do it" claim: "The district court noted in a footnote that this was 'not a case in which Plaintiff admitted that yes, he tampered with the security device . . . but the officers used excessive force in subduing him. Instead, Plaintiff alleges in his complaint that he was not tampering with a safety device in his cell and Defendants Watson and Wright chemically gassed him for various retaliatory or discriminatory reasons.'" Maj. Op. at 7 (quoting Doc. 37 at 11 n.5). If that were indeed the only type of excessive-force claim that Hall had pleaded, *Heck*, in my view, would foreclose it. In that instance, Hall's claim would

meet both of the *Heck*-bar prerequisites that we specified in *Dixon v. Hodges*:  It would (1) "necessarily impl[y] the earlier decision is invalid," because the prison's disciplinary proceeding resulted in a decision that Hall did tamper with the sprinkler; and (2) it would be "necessary to the success of his § 1983 suit," because, again, the very premise of "his" (*i.e.*, Hall's particular) claim would be that no tampering occurred.  887 F.3d 1235, 1237 (11th Cir. 2018).

All of which is to say that if we were stuck with the premise that the lone excessive-force claim that Hall pleaded was of the "I didn't do it" variety, I'd have to conclude that *Heck* barred it.  But—and for me it's a big but—I don't think we're stuck with that premise.  Rather, I think that Hall's pro se complaint, liberally construed, is properly read to present an "I did it but the force used to subdue me was nonetheless constitutionally excessive" claim.  He alleged there—with my enumeration added for clarity—that Officers Watson and Wright gassed him "[1] without any justification or sufficient reason to wantonly cause him pain or injury or [2] to retaliate against [him] for filing grievances, Lawsuits or for his past disciplinary history or [3] using excessive force against him."  Doc. 9 at 9-12.  Now, I'll admit, that's a little hard to make out, but I think that the final phrase, which I've labeled No. 3, really makes only as an alternative to the "I didn't do it" claim in No. 1.  And notably, in his opposition to the officers' motion to dismiss, Hall seemed—again, being charitable—to say something similar, calling the "charge of tampering with safety device . . . merely incidental or slight to his further claims of excessive force against Watson and Wright."  Doc. 13 at 8-11.

21-12106                    Newsom, J., Concurring                    3

So, as I see it, Hall alleged an "I did it but . . ." claim. That claim—unlike any "I didn't do it" claim that he might also have brought—is not *Heck*-barred because it doesn't necessarily imply the invalidity of the prison disciplinary proceeding. To the contrary, it acknowledges the result of that proceeding and insists that Officers Watson and Wright violated the Eighth Amendment for independent reasons.